J. C. THOMAS and Martha Thomas,
Plaintiffs,

v.

George D. PATTERSON, District Director of Internal Revenue, Defendant.

Civ. A. No. 9098.

United States District Court
N. D. Alabama, S. D.

Nov. 2, 1959.

John W. Gillon and Ralph B. Tate, of Spain, Gillon & Young, and Ira L. Burleson, Birmingham, Ala., for plaintiffs.

W. L. Longshore, U. S. Atty., and M. L. Tanner, Asst. U. S. Atty., Birmingham, Ala., and Arthur C. Flinders, Atty., Dept. of Justice, Washington, D. C., for defendant.

LYNNE, Chief Judge.

This cause coming on to be heard was tried by the Court without a Jury. After a full and fair consideration of the evidence adduced by the parties and the written trial briefs of counsel, the Court now proceeds to make and enter the following findings of fact, conclusions of law and judgment:

Findings of Fact

1. The Plaintiffs are husband and wife. On or about February 14, 1957,

they filed their joint Federal Income Tax Return for the calendar year 1956 and paid the tax thereon. After audit, the District Director of Internal Revenue determined a net tax deficiency for the year 1956 of $65.59. The deficiency was asserted for failure of the Plaintiffs to include as additional income the sum of $284.48 representing the expense of J. C. Thomas' employer, Liberty National Life Insurance Company, (sometimes hereinafter referred to as the Company) incurred by it for the expense of attendance by taxpayers at a meeting of the Torch Club of the Company held at Hotel Chamberlin, Fort Monroe, Virginia, from May 16th to May 20th, 1956. After exhausting administrative procedures provided by law, taxpayers did, on April 18, 1958, pay to the Defendant the asserted deficiency with interest thereon totaling $66.35. On May 16, 1958, Plaintiffs filed with the Defendant their Claim for Refund of such sum alleged to have been erroneously assessed and collected. The Claim for Refund was denied by the Defendant by registered mail on May 22, 1958. Thereupon, on June 2, 1958, Plaintiffs filed this action.

2. Plaintiff, J. C. Thomas, was employed by the Company in 1955 and 1956 as a field representative working in one of its district offices in Birmingham.

3. To attend this meeting, Plaintiffs departed from Birmingham on May 14, 1956, spent two nights en route at a place of public lodging, and arrived at Hotel Chamberlin on May 16th. They departed from the Hotel Chamberlin on May 20th, and spent one night at a public lodging en route to Birmingham and reached home on May 21st. Plaintiffs used their own automobile bearing all the expenses therefor. Prior to the departure of Plaintiffs from Birmingham, J. C. Thomas received from his employer a check for $168.16 to be used for expense of transportation, meals and lodging to and from the meeting place. All of this sum was expended by Plaintiffs for these purposes.

4. The Company paid direct to the hotel $103.40 for the Plaintiffs' lodging and meals at the hotel while attending the meeting. The Company also paid direct to a travel agency the sum of $12.92 representing the expenses of a sight-seeing trip to Williamsburg, Virginia. These expenses totaled $284.48, the asserted deficiency in income which produced the asserted tax deficiency of $65.59.

5. Annual conventions of the Torch Club of the Company are the culminating features of the training program of the agency department of the Company for its field representatives. The Torch Club originated in 1931 and is composed each year of outstanding field representatives of the Company who have, during the preceding year, attained certain standards, evidenced high abilities, and made outstanding contributions to the Company in their chosen field. Membership in the Torch Club is attained by invitation from the Company upon qualification by attaining pre-announced goals. It is the Company's experience that those representatives who attain the pre-announced goals are more apt for the type of instruction received at such meetings and for positions of leadership in the Company.

6. The Company requires those employees, agents, supervisors, superintendents, home office officials who are invited and their spouses to attend the annual meetings of the Torch Club. This requirement is not a condition of continued employment, but failure to attend without adequate reason is frowned upon and adversely affects his future promotion. So that the selection of those to attend may be objective and afford equal opportunity to all field representatives, as well as to properly provide an incentive and motivation for attendance, the Company establishes general qualifications every year. These qualifications vary from year to year, but production of life insurance sales is always an important criterion.

7. The evidence is undisputed that the purpose of such meetings of the Torch Club and the nature of the programs promotes the professional knowledge, skill, attitude and morale of agents and their

wives in attendance and this under pleasant surroundings. Attendance of those present upon the scheduled program is required and Plaintiffs did so attend. The tours and planned recreation providing entertainment for those in attendance, could not and did not detract from the genuine business character and purpose of the meeting.

8. The presence of the Plaintiff wife at the meeting served a bona fide business purpose. This business purpose is manifested by the employment practices of the Company showing the great importance the Company places upon the wife of the agent, the interview with the prospective agent's wife before employment, the literature sent to the agent's wife instructing her on how she can help her husband to become more successful in the business, and the periodic reports sent by the Company to the wife after employment. The bona fide business purpose is further manifested by the philosophy of the Company as related by its President that the wife, as well as the husband, is considered an employee; by the positive efforts of the Company to obtain and maintain the loyalty of the wife and to draw her closer to the Company in the interest of the Company's business and in the interest of the business of the husband; and by the fact that attendance by the wife at the meetings provides her with information, and knowledge, of the Company's business and its nature. It makes her feel closer to the Company, relieves her of any possible feeling of resentment toward the Company for taking the husband away from her and the family, assures a higher tone of the meeting, and eliminates occasional misconduct problems that attend such meetings when they are stag affairs.

9. Employees who qualified for an invitation, and were invited to attend, and who failed to attend for any reason, could not and did not receive any money or other thing of value from the Company.

10. The field representatives of the Company, including Plaintiff, J. C. Thomas, had no control over the program, nor the time and place for holding the meeting.

11. Annual meetings of a similar nature are of common and frequent occurrence and traditional in the life insurance industry generally and with the Company.

12. The parties stipulated that the total expenses of $284.48 was reasonable.

## Conclusions of Law

1. The Court has jurisdiction of the subject matter and of the parties.

2. The jurisdictional requisites have been complied with by the Plaintiffs.

3. The $168.16 advanced by J. C. Thomas' employer to him for reimbursement of the traveling expenses of the taxpayers, did constitute gross income to the taxpayers, but the total amount of such sum was deductible under the provisions of 26 U.S.C.A. § 62(2) and 26 U.S.C.A. § 162; or in the alternative said sum did not constitute gross income to the Plaintiffs.

4. The hotel bill of $103.40 paid direct by taxpayer's employer to the hotel and the sum of $12.92 paid direct to the travel agency by taxpayer's employer, did not constitute income to taxpayer; or in the alternative if such sums did constitute income to taxpayer they were deductible expenses within the meaning of 26 U.S.C.A. § 62(2) and 26 U.S.C.A. § 162.

5. There is no evidence in the record to sustain the contention of the Defendant that any part or all of the $284.48 constituted a bonus or a reward to the taxpayer, J. C. Thomas.

6. The attendance by taxpayer, Martha Thomas, at the meeting served a bona fide business purpose.

## Judgment

It Is Ordered, Adjudged and Decreed by the Court, that Plaintiffs have and recover of the Defendant the sum of $66.35 with interest at 6% from April 18, 1958, together with the cost of Court in this behalf expended, as provided by law for overassessment by the Defendant and payment by the Plaintiffs to the Defendant of income tax for the calendar year 1956.